**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**


CHARLES ARTHUR THOMAS,   :

   Petitioner,      :

vs.          : CIVIL ACTION NO. 13-00484-WS-C

UNITED STATES OF AMERICA,  : CRIMINAL ACTION NO. 11-0071-WS-C

   Respondent.


## REPORT AND RECOMMENDATION

Petitioner, Charles Arthur Thomas, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 51). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Thomas's § 2255 motion be **DENIED**.

## FINDINGS OF FACT

On February 19, 2011, two Mobile County Street Enforcement Narcotics Team ("MCSENT") officers discovered petitioner and Tiwanna Brown smoking marijuana in a parked vehicle on Springhill Avenue and arrested the pair for loitering for the purpose of drug activity. (*Compare* Doc. 25, at 3-4 *with* Doc. 47, at 23.) When the officers conducted an inventory search of the vehicle prior to towing, a loaded .32 caliber pistol was found under the driver's seat. (Doc. 25, at 4; *see also* Doc. 47, at 23.)[1] Officers also found five plastic bags of marijuana in the center console and two plastic bags of

---

[1]   This is the seat on which Thomas was sitting at the time of his arrest. (*Id.*)

marijuana in Brown's purse. (Doc. 25, at 4; *see* Doc. 47, at 23.)[2] A correctional officer at the Mobile Metro Jail found another bag of marijuana in petitioner's right shoe while processing Thomas into the facility. (Doc. 25, at 4.) Thomas and Brown were booked into the jail, the petitioner on a charge of marijuana in the first degree. (*Id.*)

MCSENT investigators notified ATFE Task Force Officer Louis Screws of Thomas' arrest and a search of federal and state records by Screws revealed a prior conviction in this Court for assaulting an employee of the United States and using a firearm during a crime of violence. (*Id.*; *see also* Doc. 47, at 24 ("Mr. Thomas had been convicted in the United States District Court for the Southern District of Alabama of robbery of a U.S. postal carrier and use of a firearm during a crime of violence. This was back in . . . [']93 . . . . Mr. Thomas had not been granted a restoration of his Federal firearm rights, and the firearm that was found under the driver's seat was not manufactured in the State of Alabama; thus, it affected interstate commerce.").)[3] The unearthing of a prior felony conviction in this Court led to Thomas being indicted in this case, on March 24, 2011, on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (*See* Doc. 1.)

On May 3, 2011, the date of arraignment, the Court appointed Federal Defender Fred Tiemann to represent Thomas. (*See* Docs. 5 & 7.) On June 17, 2011, at a change of plea hearing, Thomas pled guilty to the sole count of the indictment without benefit of a written plea agreement. (Doc. 47, at 24.) Prior to sentencing, defense counsel filed

[2] "Thomas was Mirandized and interviewed at the scene, and during the course of the interview he confessed to possession of the firearm." (Doc. 47, at 23.)

[3] It was later discovered that Thomas was convicted of second-degree possession of marijuana in 2001 in Mobile Municipal Court. (Doc. 25, at 7.)

objections to the Presentence Investigation Report ("PSR"), arguing that the four-point adjustment that raised petitioner's offense level from 22 to 26 should be reconsidered. (*See* Doc. 23, at 5-7.)[1]

At sentencing, on October 19, 2011, defense counsel argued that petitioner had accepted responsibility for his actions despite his continued drug use and that his client did not deserve the four-point enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) both because the marijuana possessed was not for distribution—instead, it was intended for personal use—and because the gun did not have the potential for facilitating the possession of marijuana. (*See* Doc. 48, at 4-9.) The United States then called Officer Tilford Saunders who testified about the circumstances surrounding petitioner's arrest.[2] Saunders testified that the baggies of marijuana that the officers found in the inventory search of the vehicle contained hydro marijuana—a higher grade of marijuana than regular marijuana—that would sell not for $5.00 a bag but $15.00 to $20.00 per bag. (Doc. 48, at 15; *see also id*. at 18-19 ("Mexican weed is usually a regular weed, and . . . it comes out of Texas. It's normally a dark color green. The smell is not as loud. . . . Hydro usually comes from out of – home grown out of the United States, California, Oregon. This marijuana is usually a bright green color. Sometimes it has an orange leaf inside of it or sometimes it has a purple leaf inside of it. This particular marijuana [seized from

---

[1] Counsel also asserted several additional arguments related to acceptance of responsibility and the stolen firearm. (*See* Doc. 23, at 1-3.)

[2] The government released one of its witnesses following defense counsel's stipulation that Thomas was arrested the week before sentencing and found to be in possession of twelve (12) small baggies of marijuana. (Doc. 48, at 11; *see also id*. at 12 ("I would proffer that at the time of his arrest last week, he had 12 small baggies, probably nickel baggies would describe them, of marijuana on him at the time of his arrest . . . [pursuant to t]he Court's warrant for revocation of his pretrial release.").)

Thomas] was bright green and orange. And for me to notice that marijuana, it's called [K]ush, it's coming from out of northern California.").) Officer Saunders testified on cross-examination (by Tiemann) that the inventory of Thomas' vehicle did not produce a scale or large amounts of money and the officers did not witness any hand-to-hand transactions or foot traffic around the vehicle. (*Id*. at 21.)

> Q      Okay. So, you have no evidence that Mr. Thomas was distributing marijuana?
>
> A      Besides the way that it was packaged and the female subject having two of the similar type bags that she did state that she did receive it from him, but that's the only thing I have [a]s facts.

(*Id*.) Officer Saunders went on to explain that the marijuana seized from the console was not consistent with personal use because of the way it was packaged (*id*. at 24 ("The five that was actually inside the center console is the way that normally people would keep in a plastic bag to distribute."); *see id*. at 25 ("[O]ne of those blunts would actually carry him for over six hours. So, it's more than personal use to a person that smokes that level of marijuana.")) and that the bag found on Thomas' person "was not actually on him to, say, to smoke." (*Id*. at 24.)

Following the arguments of the prosecutor regarding all of Thomas' objections (Doc. 48, at 28-30; *see id*. at 29 ("As to the facilitating part, . . . I think the Court heard testimony that the Defendant was in the act or that it was packaged for distribution, and that was actually the underlying conduct by the Defendant. Certainly, the case law is clear that . . . drugs and guns go together for that type of conduct. Even if it is mere personal use, then I think the fact that you have a loaded gun under the driver's

---

Saunders admitted that he did not include in his report Brown's statement in this regard. (*Id*.)

seat, you've got the baggies right next to then in the center console, he's sitting there smoking a marijuana cigar, it certainly has the potential to facilitate that conduct. . . . [T]he gun is for protection. It's loaded. It's for protection of him. It's for protection of his property. And that would include the marijuana. Certainly from Off. Saunders' . . . testimony, that much marijuana, . . . was worth a significant amount of money. So . . . I think that the four-level enhancement for the potential to facilitate or the actual facilitation of the conduct is appropriate.")), and additional comments from defense counsel (*id.* at 30-31 ("There is one additional fact disclosed by the Government that I wanted to point out to the Court. I don't believe this is in dispute, but law enforcement found the same kind of marijuana from Tiwanna Brown. They charged her with possession of marijuana, second, which is a possession charge[;] . . . they did not accuse her of distribution even though she had two of the same baggies. My client was charged with possession of marijuana, first, I believe, by virtue of the fact that he had a prior conviction for possession of marijuana, second. Even if it was mere possession, they had to charge it out as first degree. So, I just wanted to point out that although Tiwanna Brown had identical marijuana, two baggies instead of five, they charged her with possession, not distribution.")), the Court rejected all of Thomas' objections to the PSR (*see id.* at 31-34). Relevant to Thomas's motion to vacate, the Court ruled in the following manner regarding the objections to application of the four-point enhancement under U.S.S.G. § 2K2.1(b)(6):

> Possession of a firearm in connection with a felony offense, I think there's plenty of evidence here to indicate that while there's not a large quantity of marijuana, certainly there[ are] enough of the baggies of marijuana to indicate an intent to possess with intent to distribute.

> We also have the evidence and testimony from the police officer that Ms. Brown told him that she got the marijuana from Mr. Thomas. That's enough to complete the requirement of distribution.

The presence of the gun, the fact that the marijuana is in the console and not in a pocket is another indication that it was possessed with intent to distribute. I think there's plenty of evidence here to indicate some intent to distribute, which puts it in the felony range.

Mr. Tiemann has pointed out that Mr. Thomas had a prior conviction for marijuana possession which, under State law, subsequent possession is generally then pushed into the felony range, and that's what he was charged with.

So, plenty of evidence here to indicate that the firearm was possessed in connection with a felony offense, that being possession of marijuana with intent to distribute. Accordingly, the objection is overruled.

(*Id*. at 33.) Several members of petitioner's family addressed the Court, as did Thomas. (*Id.* at 34-44.) Thereafter, the Court sentenced petitioner to a term of imprisonment of 78 months, a sentence falling at the low end of the guideline range as calculated by the Court. (*Compare id.* at 48 *with id.* at 43 & Doc. 25, at ¶ 57 ("Based on a total offense level of 26 and a criminal history category of III, the guideline range of imprisonment is 78 to 97 months.").)

Thomas filed a timely notice of appeal after sentencing (Doc. 36) and was represented on appeal by Elsie Mae Miller, also of the Federal Defender's Office (*see, e.g.,* Doc. 42). Ms. Miller filed a no-merit brief in accordance with *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and concurrent therewith filed a motion requesting that she be allowed to withdraw from her representation of the petitioner. (*See* Doc. 49, at 2.) The Eleventh Circuit Court of Appeals agreed with appellate counsel's "assessment of the relative merit of the appeal" and, therefore, granted her motion to withdraw. (*Id*.) "Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw is **GRANTED**, and Thomas's conviction and sentence are **AFFIRMED**." (*Id.*) The Eleventh Circuit's

September 6, 2012 *per curiam* opinion (Doc. 49, at 1) was issued as mandate on October 9, 2012 (Doc. 50, at 2).

On September 25, 2013, Thomas filed the pending motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 51, at 13) and asserts that he was denied effective assistance of counsel during sentencing (*id.* at 4) because counsel failed to call Tiwanna Brown as a witness (Doc. 51, Brief in Support of Motion to Vacate, at 10-13)[7] and because "COUNSEL FAILED TO PROPERLY ARGUE THE OBJECTION TO MOVANT POSSESSING THE FIREARM IN CONNECTION WITH ANOTHER FELONY OFFENSE" (*id.* at 14; *see id.* at 14-16).[8] Thomas contends that he was prejudiced by these errors because he was sentenced to more time in jail than he should have been. (*Id.* at 13 & 16.)

## CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is

---

[7]     Thomas attached to his motion to vacate the affidavit of Tiwanna Brown; therein, Brown states that she purchased the marijuana found in her possession on February 19, 2011, from "a local street dealer that goes by the name 'Rylands'." (Doc. 51, Brief in Support of Motion to Vacate, Exhibit B, ¶¶ 4 & 6.)

[8]     In his reply brief, petitioner asserts that the biography of Fred Tiemann referenced in the government's response to his motion should be stricken since he is unable to access the internet in prison and, therefore, cannot review the biography. (*See* Doc. 55, at 2-3.) Because the Court has considered nothing in Mr. Tiemann's biography in ruling on the motion to vacate, petitioner's request that the biography reference be stricken is deemed **MOOT**.

otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

In this instance, petitioner's sole argument is that constitutionally ineffective assistance of counsel at sentencing entitles him to the relief afforded by 28 U.S.C. § 2255. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States*, 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").[9] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States*, 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[10]

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[10] It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See* (Continued)

The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States,* 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984). Moreover, in the context of sentencing following entry of a guilty plea, the court simply considers whether petitioner has established, in accordance with *Strickland, supra,* that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. May 12, 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 364 Fed.Appx. 769 (3rd Cir. 2010), *cert. denied,* ___ U.S. ___, 131 S.Ct. 1026, 178 L.Ed.2d 848 (2011).

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[1] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

---

*Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley,* 209 F.3d 1243 (11th Cir. 2000)), *cert. denied,* 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[1] In order to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. Jul. 12, 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied sub nom. Means v. Tucker,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . .  Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far

between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied,* 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

With these principles in mind, the undersigned turns to each of Thomas' claims of alleged ineffective assistance of counsel. First, petitioner contends that counsel should have been prepared to call Tiwanna Brown as a witness during his sentencing proceeding to refute Officer Saunders' testimony that Brown told him she got the two baggies of marijuana found in her purse from Thomas. (*See* Doc. 51, Brief in Support of Motion to Vacate, at 10-13.) Initially, the undersigned notes that petitioner has not established counsel's deficiency in this regard. This is not only because Officer Saunders' testimony clearly came as a surprise—nothing to this effect was contained in the testifying officer's arrest report—but also because a decision not to call as a witness at sentencing an individual who was also breaking the law at the time of the petitioner's arrest on February 19, 2011 cannot seriously be questioned. *Compare Pairs, supra,* 373 Fed.Appx. at 982 ("[J]udicial review of an attorney's performance is 'highly deferential,' and the court **must 'eliminate the distorting effects of hindsight'** and

evaluate performance from the attorney's perspective at the time the challenged conduct occurred.") and *Dingle v. Secretary for the Dep't of Corrections,* 480 F.3d 1092, 1099 (11th Cir.) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done. . . . Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"), *cert. denied,* 552 U.S. 990, 128 S.Ct. 530, 169 L.Ed.2d 339 (2007), *with, e.g., Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir.) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."), *cert. denied,* 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995).

Even assuming deficient performance in this regard, however, Thomas has not and cannot established the prejudice prong as to do so would require him not only to establish that this Court would have found Brown's testimony more credible than that of Officer Saunders but, as well, that Brown's testimony would have overcome all other relevant evidence thereby making the four-level enhancement inapplicable. Thomas has made neither showing; instead, he only argues in a conclusory manner that he was prejudiced by being sentenced to a longer term of imprisonment than what would have been applicable under the guidelines had the four-point enhancement not been in play. (*Compare* Doc. 51, Brief in Support of Motion to Vacate, at 13 *with* Doc. 55, at 3 (petitioner addresses solely the performance prong).) The Court's comments in finding the four-level enhancement proper in this case, to the exclusion of Saunders' testimony (*see* Doc. 48, at 33 ("Possession of a firearm in connection with a felony offense, I think there's plenty of evidence here to indicate that while there's not a large

quantity of marijuana, certainly there[ are] enough of the baggies of marijuana to indicate an intent to possess with intent to distribute. . . . The presence of the gun, the fact that the marijuana is in the console and not in a pocket is another indication that it was possessed with intent to distribute. I think there's plenty of evidence here to indicate some intent to distribute, which puts it in the felony range. Mr. Tiemann has pointed out that Mr. Thomas had a prior conviction for marijuana possession which, under State law, subsequent possession is generally then pushed into the felony range, and that's what he was charged with. So, plenty of evidence here to indicate that the firearm was possessed in connection with a felony offense, that being possession of marijuana with intent to distribute.")), along with a consideration of relevant case law in the Eleventh Circuit, *see, e.g., United States v. Gray,* 544 Fed.Appx. 870, 897 (11th Cir. Nov. 15, 2013) ("The Sentencing Guidelines provide a four-level enhancement where the defendant '[u]sed or possessed any firearm or ammunition in connection with another felony offense.' U.S.S.G. § 2K2.1(b)(6)(B). This enhancement applies 'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense.' U.S.S.G. § 2K2.1 cmt. n. 14(A). 'A firearm found in close proximity to drugs or drug-related items simply "*has*"—without any requirement for additional evidence— the potential to facilitate the drug offense.' *United States v. Carillo-Ayala,* 713 F.3d 82, 92 (11th Cir. 2013). . . . During a traffic stop, Jefferson told the officers he sold the incense found in his car to customers as cocaine because they could not tell the difference. MGPD Detective Velez testified a loaded gun was found under the driver's seat of Jefferson's car, and the bag containing the incense was in the passenger's seat compartment. Where a firearm is near drugs or drug-related items, it automatically has the ability to facilitate a drug crime, without the requirement of any additional

evidence. *Carillo-Ayala,* 713 F.3d at 92. . . . The district court did not clearly err in enhancing Jefferson's offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B)."), *cert. denied sub nom. Thompson v. United States,* ___ U.S. ___, 134 S.Ct. 1571, 188 L.Ed.2d 580 (2014), and *cert. denied,* ___ U.S. ___, 134 S.Ct. 2686, ___ L.Ed.2d ___ (2014); *United States v. McWilliams,* 536 Fed.Appx. 837, 840 (11th Cir. Aug. 28, 2013) ("U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement where the defendant used or possessed a firearm in connection with another felony offense. 'Another felony offense' is defined as any federal, state, or local offense, other than the firearms possession, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought or a conviction obtained."); *United States v. Smalls,* 458 Fed.Appx. 788, 790 & 790 n.3 (11th Cir. Jan. 19, 2012) ("Smalls argues that the district court erred in applying a four-level enhancement for use or possession of a firearm 'in connection with another felony offense,' . . . based upon its finding that, at the time of his arrest, Smalls was involved in committing the felony offense of possessing marijuana with intent to distribute it . . . . Smalls argues this was erroneous because, he asserts, the evidence was more consistent with personal use of marijuana than with distribution of it. . . . The district court's finding was based on testimony at the sentencing hearing and information in Smalls' presentencing report which showed that, at the time of his offense, Smalls was in possession of seventy-one grams of marijuana, drug paraphernalia, and numerous small baggies that the court found are typically used to distribute marijuana, and that Smalls had a prior record of conviction for a drug-distribution offense. Although Smalls argues that some of this evidence was consistent with personal use, that Smalls may have used some of the marijuana himself does not necessarily negate that he also distributed it, and therefore this assertion alone does not

render the district court's finding clearly erroneous."), clearly establishes that petitioner's sentencing would not have been different. In particular, the manner in which the marijuana was packaged in baggies, the location of five baggies of marijuana in the center console of the car as opposed to on Thomas' person, and the location of a loaded gun under the driver's seat—the seat in which petitioner was sitting at the time of his arrest—support application of the § 2K2.1(b)(6)(B) enhancement without the necessity of Saunders' additional testimony regarding what Brown told him. Thus, the prejudice prong is absent.

Thomas' other contention is that "COUNSEL FAILED TO PROPERLY ARGUE THE OBJECTION TO MOVANT POSSESSING THE FIREARM IN CONNECTION WITH ANOTHER FELONY OFFENSE[.]" (Doc. 51, Brief in Support of Motion to Vacate, at 14.) In making this argument, petitioner relies upon the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) (*id.* at 14-16) and specifically contends that his possession of marijuana was not a felony at the time of his firearm possession (*see* Doc. 55, at 3-4). In *Carachuri-Rosendo,* the Supreme Court

> held that the term "aggravated felony" in the INA no longer included
> state offenses that, though they could have been enhanced by a federal
> recidivist provision had they been federally charged, were not, in fact, so
> charged or enhanced. *Carachuri-Rosendo,* 130 S.Ct. at 2589. Therefore,
> going forward, a district court can only consider a penalty enhanced by a
> recidivism statute "when the [recidivist] finding is a part of the record of
> conviction." *Id.* at 2587 n.12. If that finding is not a part of the record of
> conviction, *Carachuri-Rosendo* holds that an individual has "not been
> convicted of a felony punishable under the Controlled Substances Act,"
> and he remains eligible for cancellation of removal or waiver of
> inadmissibility under 8 U.S.C. § 1229b(a). *Id.* at 2589-90. In other words,
> the Court narrowed the scope of the INA by interpreting the term
> "aggravated felony" in 8 U.S.C. § 1229b(a) to decriminalize certain
> individuals who would otherwise have been aggravated felons under the
> INA—it altered [] "the class of persons that the law punishes."

*Farmer v. United States,* 867 F.Supp.2d 785, 789 (E.D. N.C. 2012) (some citations omitted).

Thomas' case, of course, has nothing to do with the INA or the term "aggravated felony," *see United States v. Rivera,* 2011 WL 1134656, * 2 (E.D. N.C. Mar. 3, 2011) ("*Carachuri-Rosendo* addressed the applicability of a state's recidivist law to the aggravated felony determination in an immigration context."), *report and recommendation adopted,* 2011 WL 1134605 (E.D. N.C. Mar. 28, 2011), and no court in the Eleventh Circuit has given any indication that *Carachuri-Rosendo* has any application to sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Indeed, any such indication/application would appear counterintuitive to the commentary in note 14(C) following § 2K2.1, to which the Eleventh Circuit often refers, that "[a]nother felony offense' is defined as any federal, ***state***, or local offense, other than the firearms possession, punishable by imprisonment for a term exceeding one year, ***regardless of whether a criminal charge was brought or a conviction obtained***." *McWilliams, supra,* 536 Fed.Appx. at 840 (emphasis supplied).[12] Clearly, therefore, the State of Alabama's failure to indict Thomas on the charge of first-degree possession of marijuana before his sentencing (*see* Doc. 51, Brief in Support of Motion to Vacate, Exhibit C) is of no moment since first-degree

---

[12]    Importantly, in accordance with Alabama law, "[a] person commits the crime of unlawful possession of marijuana in the first degree" not only when "[h]e possesses marijuana for his personal use [] after having been previously convicted of unlawful possession of marijuana in the second degree or unlawful possession of marijuana for his personal use only[]" but also when "[*h*]*e **possesses marijuana for other than personal use***[.]" Ala.Code. § 13A-12-213(a)(1) & (2) (emphasis supplied). Of course, possession of marijuana for other than personal use does not in any manner involve a penalty enhanced by a recidivism statute. *See id.* at (1). Therefore, *Carachuri-Rosendo* is wholly inapplicable in this case inasmuch as the Court's rejection of Thomas' § 2K2.1(b)(6)(B) objections was based upon the determination that Thomas possessed the marijuana with intent to distribute it.

"Unlawful possession of marijuana in the first degree is a Class C felony[,]" Ala.Code § 13A-12-213(b), which is punishable by imprisonment for "not more than 10 years or less than 1 year and 1 day." Ala.Code § 13A-5-6(a)(3).

possession of marijuana is a felony under Alabama law punishable by a term of imprisonment exceeding one year. Therefore, counsel was not deficient in failing to argue that a proper reading of *Carachuri-Rosendo* prohibited the four-level enhancement under U.S.S.G. 2K2.1(b)(6)(B). *Cf. Davila v. United States,* 2012 WL 2839815, *3 (D. N.J. Jul. 10, 2012) ("As *Carachuri-Rosendo* is not applicable to the matter at hand [involving career offender status under the Sentencing Guidelines], Petitioner's counsel was right not to address it at the sentencing. Counsel's failure to object to career offender enhancement on these grounds [] was not deficient in any respect, and certainly was not so deficient as to deprive Petitioner of his constitutionally guaranteed representation[.]").

Thomas has also failed to establish the prejudice prong in this respect. As reflected above, *Carachuri-Rosendo* was not applicable to petitioner's sentencing but even if the undersigned assumes the applicability of that case, this Court properly applied the four-level enhancement based upon evidence—that is,  the manner in which the marijuana was packaged in baggies, the location of five baggies of marijuana in the center console of the car as opposed to on Thomas' person, and the location of a loaded gun under the driver's seat—establishing that Thomas possessed marijuana with intent to distribute it. Therefore, petitioner was not prejudiced by counsel's failure to assert a *Carachuri-Rosendo*-based objection to sentence enhancement under U.S.S.G. 2K2.1(b)(6)(B).

In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Thomas' motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied.

28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483–84, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"). With respect to Thomas' two claims of ineffective-assistance-of-counsel discussed above, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability as to his ineffective-assistance-of-counsel claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 51) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the

magistrate judge's *factual findings*." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 24th day of July, 2014.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**